**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMANDA H. | : | |
| v. | : | NO. 25-CV-6947 |
| FRANK BISIGNANO,<br>Commissioner of Social Security | : | |

**O P I N I O N**

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE

DATE: August 26, 2026

Amanda H. has brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be denied and judgment granted in favor of the defendant.

I. *Factual and Procedural Background*

Amanda H. was born on January 10, 1980. Record at 330. She completed high school, with some special education. Record at 419. She worked in the past as a picker at a shipping warehouse. *Id*. On January 12, 2022, she filed applications for DIB and SSI, alleging disability as of July 10, 2020, on the basis of a seizure disorder, fibromyalgia, migraines, dislocated discs in her neck, heart problems, and a learning disability. Record at 338, 418.

Amanda H.'s applications were denied on May 25, 2022. Record at 83, 106. They were denied again upon reconsideration. Record at 107, 130. Amanda H. then sought review *de novo* before an Administrative Law Judge ("ALJ"). Record at 181.

A hearing was held before an ALJ on June 20, 2023, and a written decision issued on August 2, 2023. Record at 40, 131. The matter was remanded by the Appeals Council on May 3, 2024, on the basis that material evidence which was submitted was never made part of the record or considered by the ALJ. Record at 156.

A second hearing was held in this case on October 10, 2024. Record at 60. On December 23, 2024, however, the ALJ issued a written decision denying benefits. This time, the Appeals Council denied Amanda H.'s request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner for Social Security. Record at 1. Amanda H. then filed this action.

II. *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration

> requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III. *The ALJ's Decision and the Claimant's Request for Review*

In her December 23, 2024, decision, the ALJ found that that Amanda H. suffered from the severe impairments of "congenital, nonrheumatic heart disease status post-remote aortic valve replacement," cervical degenerative disc disease, and obesity. Record at 20. Several of Amanda H.'s alleged impairments she found not to be severe – these included fibromyalgia, seizure disorder, migraine headaches, anxiety, GERD, renal disease, and ascending aortic aneurysm. *Id*. As to fibromyalgia, the ALJ specified that, although Amanda H. was diagnosed with it, the medical evidence of record did not meet the criteria required by SSR 12-2p. Record at 23.

The ALJ found that no impairment, and no combination of impairments, met or medically equaled a listed impairment. Record at 23. She determined that Amanda H. retained the RFC to engage in sedentary work with the following limitations:

> [S]he can occasionally perform all postural [*sic* "postural activities"] except never crawl or climb ladders, ropes, or scaffolds. The claimant is limited to occasional exposure to fumes, odors, dusts, gases, poor ventilation. The claimant is limited to occasional vibration, and temperature extremes, but no exposure to hazards such as unprotected heights or unprotected moving mechanical parts.

Record at 25.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ concluded that Amanda H. could not return to her prior work. Record at 32. She could, however, work in such jobs as order clerk, weight tester, or gauger. Record at 33. The ALJ determined, therefore, that she was not disabled. Record at 34.

In her Request for Review, Amanda H. argues that (1) the ALJ erred in failing to consider her pain questionnaire; (2) wrongly failed to credit the report of her primary care physician, Ilana Rachshtut, M.D.; and (3) the ALJ improperly discounted her claims of pain and fatigue.

## IV. *Discussion*

### A. *The Pain Questionnaire*

Amanda H. argues that the ALJ erred in failing to discuss in her decision a pain questionnaire that she completed at the request of the agency in February, 2022. Record at 439. It is hard to disagree with her general argument that the agency should take account of evidence it has specifically requested. Nevertheless, Amanda H. supports her argument with an inaccurate quote.

The case cited by Amanda H., which was authored by the undersigned in 2022, does not – as she has written – hold that an ALJ's failure to address a petitioner's pain questionnaire can never be deemed harmless error. *See Maldonado v. Kijakazi*, Civ. A. No. 22-36, 2022 WL 17742618 at **3-5 (E.D. Pa. 2022). Neither does *Melton v. Kijakazi*, Civ. A. No. 20-5307, 2022 WL 1227972 at *6 (E.D. Pa. Apr. 25, 2022), which I cited in *Maldonado*, and which is the source of most of the language Amanda H. attributes to *Maldonado*.

Here, if the ALJ's failure to mention Amanda H.'s pain questionnaire in her decision is error, it is harmless error. The entire contents of the questionnaire are as follows:

> **Describe where the pain is located. Does it stay in one location or move to other areas of your body?** It moves all over from fibromyalgia;
>
> **Describe the pain (for example, burning, dull, sharp, aching) and severity (for example, mild, moderate, severe).** Burning sometimes;
>
> **How often do you have pain? When does it occur?** Comes and goes;
>
> **How long does it last?** Sometimes hours;
>
> **What activities or circumstances cause or increase the pain?** It comes when it wants to with fibromyalgia.

Record at 439.

As is discussed further below, the ALJ was not able to credit Amanda H.'s diagnosis of fibromyalgia because the record lacked the evidence required by the agency in order to confirm such a diagnosis. Record at 23; SSR 12-2p. The ALJ noted, however, that Amanda H. testified at the October 10, 2024, hearing: "My fibromyalgia is under control, like I don't have flare – I haven't had a flare-up in a while." Record at 52. In any event, the ALJ limited Amanda H. to sedentary work with only occasional postural activities. Record at 25.

On these facts, it is clear that the ALJ would not have reached a different decision as to Amanda H.'s right to benefits, even if she had explicitly considered the pain questionnaire. Remand is not required where it would not affect the outcome of a case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). It is not required here.

B. *Dr. Rachshtut*

Dr. Rachshtut, Amanda H.'s primary care physician, submitted a letter dated November 22, 2022, which read:

> Amanda Herman has been my patient since 2018, after taking over for her previous physician, Dr. Kunsman. Amanda has been diagnosed with Fibromyalgia, discovered by her symptoms and lab work. Due to her Fibromyalgia Amanda experiences frequent fatigue, pain, memory and mood. All of which make it difficult for her to work. Please contact my office with any questions or concerns.

Record at 1036.

The ALJ cited Dr. Rachshtut's report only to comment that "The claimant has been diagnosed with fibromyalgia." Record at 23. Then, as above, she declined to find fibromyalgia to be a medically determinable impairment because it did not meet the regulatory criteria. Amanda H. argues that the contents of Dr. Rachshtut's report should have been considered by the ALJ before she rejected the diagnosis. She maintains that Dr. Rachshtut's reference to "frequent" symptoms should have been read as a work restriction specifying limitations from 1/3 to 2/3 of the workday, although she has not identified the areas in which she should have been found restricted.

However, as the Commissioner points out, the Agency is bound by the explicit and exacting procedure set forth in SSR 12-2p in determining whether fibromyalgia can be considered a medically determinable impairment in a specific case. 2012 WL 3104869 (July 25, 2012). A physician's diagnosis of fibromyalgia is acceptable only if it is accompanied by

evidence that the petitioner meets either the 1990 ACR Criteria for the Classification of Fibromyalgia, or the 2010 ACR Preliminary Diagnostic Criteria. SSR 12-2p at Policy Interpretation sections II A. and B.

Under the 1990 ACR criteria, there must be a history of widespread pain in all quadrants of the body, and at least 11 positive, bilateral, tender points on physical examination, found both above and below the waist. *Id*. at II.A.1 and A.2. Also, there must be evidence that other disorders that could cause the petitioner's symptoms were excluded. *Id*. at II.A.3. The 2010 Preliminary Diagnostic Criteria require a history of widespread pain and repeated manifestations of six or more fibromyalgia "symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems [known as fibro fog], waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Id*. at II.B.1 and B.2. Also required is evidence that other disorders that could cause the symptoms, signs or co-occurring conditions were excluded. *Id*. at II.B.3.

Obviously, Dr. Rachshtut's one-paragraph letter did not provide anything remotely approaching the SSR 12-2p standard. Dr. Rachshtut did not even give the source or date of the fibromyalgia diagnosis, much less did she explain what "symptoms" and "lab work" might have led to it. No basis exists upon which the ALJ could have given Dr. Rachshtut's opinion any further consideration than it received.

C. *Complaints of Pain and Fatigue*

Amanda H.'s final claim is that the ALJ inadequately assessed the evidence that she suffered from pain and fatigue. Initially, Amanda H. argues that remand to the agency is necessary so that the ALJ can address Dr. Rachshtut's opinion that she suffered from "frequent" fatigue. Record at 1036.

Indeed, the record contains complaints of fatigue. However, there are not as many complaints as it would appear from Amanda H.'s Request for Review, since six of the eleven citations she provides are from the same medical event; a hospitalization between July 27 and August 3, 2023, where she was assessed for cardiac issues. *Request for Review* at 11, citing Record at 928, 929, 289, 991, 995, and 997. A seventh mention of fatigue was made in the context of treatment for "viral-like symptoms." Record at 561 (treatment note of February 12, 2021). An eighth citation is simply to Dr. Rachshtut's opinion. Record at 1036.

In any event, as Amanda H. concedes, the ALJ acknowledged her fatigue. She included limitations in the RFC assessment designed to address it by directing that Amanda H. have "no exposure to hazards such as unprotected heights or unprotected moving mechanical parts." *Request for Review* at 11. Amanda H. criticizes these limitations, writing that, in a sedentary job, she would not have much need to "avoid[] hazardous workplaces where she could fall or lose an arm." *Id*. However, she has not pointed to evidence that any further restrictions are required. Dr. Rachshtut's mention of "frequent pain, fatigue, memory and mood" is not, as she would have it, a "work restriction," since it does not propose restricting any named work activity.

Nor does Amanda H.'s testimony indicate that her fatigue would preclude a sedentary job. In her application paperwork, Amanda H. indicated that her daily activities included washing dishes, doing laundry, straightening up around the house and helping her homeschooled son with his studies. Record at 443. She testified before the ALJ that, although she experienced fatigue, she did not ordinarily nap. Record at 52. She did not mention fatigue when asked whether she could perform sedentary work, noting only a need to stand and walk occasionally. Record at 50. She has not, therefore, shown that the ALJ failed to adequately accommodate her fatigue in the RFC assessment.

As to pain, Amanda H. focuses on her cervical spine, i.e., her neck. Initially, she argues that the ALJ erred in failing to discuss her diagnosis of "cervicalgia." The ALJ, however, identified Amanda H.'s degenerative disc disease in the cervical spine as a severe impairment. Record at 20. Because "cervicalgia" is defined as "neck pain," Amanda H.'s cervicalgia was not a separate condition from her cervical degenerative disc disease, and there was no need for the ALJ to discuss it as such. *See* Https://my.clevelandclinic.org/health/symptoms/21179-neck-pain.

Amanda H. also states that her "physical therapy notes make it crystal clear that the ALJ needed to include some manipulative limitations in her RFC." *Request for Review* at 15. However, Amanda H. only attended an evaluation at a physical therapy facility, and one treatment session. Record at 1286, 1289, 1291. At her evaluation, she presented with a reduced range of motion in the cervical spine, but only mildly reduced (4/5) strength in her arms. Record at 1287. Manipulative limitations (i.e., those in reaching, handling, fingering or feeling) were not mentioned at all. At the single physical therapy session, Amanda H. did not participate in any exercise. Record at 1289. These extremely limited notes, which lack any mention of a manipulative limitation, make nothing "crystal clear."

The evidence as a whole regarding Amanda H.'s neck pain was mixed. As the ALJ noted, a July 19, 2023, MRI confirmed previous diagnoses of cervical spine abnormality. Record at 29, *citing* 1325. The report of the MRI results reads: "Discussed with Amanda that we recommend surgery at this time as she is at risk for spinal cord injury." Record at 1325. Nevertheless, in a physical examination in October, 2024, Amanda H. was noted to have a normal range of motion in the cervical back, with a supple neck. Record at 1498. In earlier notes, as well, Amanda H. was observed to have a normal range of motion in her cervical spine.

Record at 897 (August 1, 2022). At another time, she reported only minimal neck pain. Record at 934 (July 21, 2022).

At her hearing, Amanda H. testified that she was having a "flare-up" with her neck, but explained: "Well, right now, my parents are getting windows installed in the garage and we have to move everything in the garage and move things ... I think from us moving things, and doing the lifting, it's irritating this in my neck." Record at 79. The ALJ noted this. Record at 25.[1] The limited range of sedentary work prescribed by the ALJ in her RFC assessment would not require this degree of exertion.

The ALJ also relied on the opinions of the agency physicians who reviewed Amanda H.'s records and concluded that she could engage in a limited range of light work. Record at 30-31, *citing* 92-3 (Gerald J. Levandoski, M.D.), and 115-6 (Alfonso Cuozzo, M.D.). Although the ALJ found both of their opinions "persuasive," she issued an RFC assessment which was considerably more sympathetic to Amanda H., requiring only sedentary work. Record at 25.

Finally, Amanda H. maintains that the ALJ wrongly "relied upon a January of 2019 EMG to conclude that Plaintiff does not have cervical radiculopathy," whereas "Plaintiff's cervical radiculopathy appeared in June of 2019." *Request for Review* at 5. In fact, the June, 2019, treatment note mentions pain radiating into Amanda H.'s arm but does not diagnose radiculopathy, specifying: "Not sure if R-arm pain is radicular, may be just tendonitis." Record at 1180.

[1] Similarly, when Amanda H. reported severe neck pain to her primary care physician on February 11, 2020, she explained that her warehouse picker job "required her to wear weight on her neck." Record at 1146; *and see* 680 ("She works at Amazon and is a 'picker' – picks things out of bin and puts in a bag that she hangs around her neck ... "). The ALJ found that Amanda H. could no longer do this work. Record at 32.

Clearly, substantial evidence supported the ALJ's decision that the evidence regarding Amanda H.'s neck pain was not entirely consistent with her claims of disability. Record at 27. Amanda H. has not shown otherwise.

V. *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE